ALBION M. BENTON
AND
ELIZABETH F. BENTON
*vs.*
MAINE STATE HIGHWAY COMMISSION

York.   Opinion, December 13, 1965.

*Ronald M. Roy,* for State Highway Commission.

*Albert Knudsen,* for Defendant.

*Charles W. Smith,* for Plaintiffs.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, RUDMAN, JJ. MARDEN, J., did not sit. SULLIVAN, J., sat at argument but retired before the opinion was adopted.

WILLIAMSON, C. J. This land damage case arises from a taking in 1958 by the State Highway Commission of land for highway purposes by eminent domain. The case reaches us on appeal from the judgment of the Superior Court entered on an appeal from a "joint board" decision. R. S., 1954, c. 23, § 23. The controversy is over the finding by the presiding justice that no land was taken. No objection is made to an award of $100 for slope and drainage easements.

The appellants' property adjoins Route 1 in Saco. The State Highway Commission in the present proceedings took by eminent domain land bounded on the east by what it contends was the east line of Route 1 determined and settled in a relocation of the highway bounds in 1934. It is

agreed that the 1958 line is precisely the line allegedly described in the 1934 report of the County Commissioners.

The appellants contend that the east line of Route 1 was not validly settled in the 1934 proceedings or thereafter by the State, and that the west line of their property lies westerly of the east line of the 1958 taking. From this it follows, they say, that land was taken from them in 1958 for which they are entitled to compensation.

We may picture the claims in this manner. In 1934 the east line of the highway along the appellants' property was allegedly defined by the County Commissioners under R. S., 1930, c. 27, § 11 (now 23 M.R.S.A. § 2101) which reads, in part as follows:

> "When the true boundaries of highways or town ways duly located, or of which the location is lost, or which can only be established by user, are doubtful, uncertain, or lost, the county commissioners of the county wherein such highway or town way is located, upon petition of the municipal officers of the town wherein the same lies, shall, after such notice thereon as is required for the location of new ways, proceed to hear the parties, examine said highway or town way, locate, and define its limits and boundaries. . ."

In 1958 the State Highway Commission to correct any errors again took by eminent domain the same land (setting aside the slope and drainage easements), adopting the east line of the 1934 report as the east line of the 1958 taking. If the State Highway Commission took nothing, then the landowners lost nothing. But the latter say the east line of the highway was not determined in 1934, or subsequently until 1958, and therefore their west line (or the highway east line) had not been hitherto established at the line claimed by the State.

The points of appeal are:

That the court erred in not allowing evidence of the location of the easterly side line of the highway prior to the 1934 report of the County Commissioners and in excluding evidence with reference to the validity of the 1934 proceedings, and that the court erred in holding the alleged relocation in 1934 to be valid and legal.

The main issue, in the view of the State Highway Commission, is whether the ruling was correct that the validity of the 1934 relocation could not be questioned or raised in the present action, and that the right so to claim was barred.

In our opinion the 1934 relocation was void at the outset. The county commissioners were without authority to locate the bounds of the highway. No suitable petition was before them on which they had authority to proceed. The document upon which jurisdiction must depend was in the following terms:

"(SEAL)          CITY OF SACO

Saco, Maine, August 2, 1932

Board of County Commissioners
of York County, Maine.

Gentlemen;

The Municipal Officers of the City of Saco respectfully petition the Board of County Commissioners of York County, State of Maine to redefine the highway limits on Highway 'A' located in the City of Saco from the Cascade Road to the compact section of Saco just west of Goose Fair Underpass.

Municipal Officers of City of Saco.
By Ralph N. Perry. . . City Clerk."

Accepting for our purposes that "redefine" in the petition is the equivalent of "locate," and that the descriptions

of the interests to be taken and of the way are adequate, we have the petition in 1932 signed "Municipal Officers of City of Saco. By Ralph N. Perry, City Clerk." The municipal officers of the City of Saco were the mayor and aldermen. R. S., 1930, c. 1, § 6-XXV (now 1 M.R.S.A. § 72-12). No authority is suggested permitting a petition in their behalf to be signed by the city clerk, or any persons other than themselves, or a majority of their number. R. S., 1930, c. 1, § 6-III (now 1 M.R.S.A. § 71-3). Cf. *Curtis* v. *City of Portland,* 59 Me. 483.

Even assuming that "Highway A" between stated termini was a way known to and identifiable by the public (which on this record is not free from doubt), the "petition" fails to state essential jurisdictional facts. There is no statement either that the "location" of the boundaries is "lost" or that the true boundaries "can only be established by user, are doubtful, uncertain, or lost." No statutory reason is given to "locate, and define its limits and boundaries."

Jurisdiction must appear in the petition, and lacking jurisdiction, as here, the actions of the County Commissioners in entertaining the petition and in entering their order defining the highway limits in 1934 must be held void. *Haile, et al.* v. *Sagadahoc County Commissioners,* 140 Me. 16, 31 A. (2nd) 925; *Phippsburg* v. *Sagadahoc County,* 127 Me. 42, 141 A. 95; *Bethel* v. *County Commissioners,* 42 Me. 478; *Small* v. *Pennell,* 31 Me. 267. As was stated in *Hayford* v. *County Commissioners,* 78 Me. 153 (3 A. 51), at p. 156: "Moreover, while generally no particular form of words is required in the petition, nor is strict technical accuracy expected therein . . ., their jurisdiction generally depends upon whether sufficient jurisdictional facts are set out, as they always should be, *in the petition which forms the foundation of their action."* (Emphasis supplied.)

The court below, in hearing the issue by stipulation of the parties before proceeding to the final hearing from

which comes the judgment appealed from, found and held as follows:

> "This Court cannot avoid judicial notice of the fact that the 'Portland Road', now 'State Highway 1' has since long before 1933 been the main artery for traffic from Portsmouth, New Hampshire into Maine and it must be concluded that owners of property adjacent to that highway must have been aware of the entry upon, use, widening, if any, improvement, if any, relocation, if any, over the years, and even though such entry and use were not brought about by statutory condemnation, such entry and occupation for public use constitutes a taking in a constitutional sense. 18 Am. Jur., Eminent Domain § 133 and see *Canadian Pacific Railway Company* v. *Moosehead Telephone Company* 106 Me. 363, 366. Seasonable action by the land owner would afford him a remedy in equity by injunction, *Moosehead, supra,* and in law by a real action to try title, or complaint in trespass to his possession, *Hussey* v. *Bryant* 95 Me. 49, 51. This election is not before the Court."

In our examination of the record we find nothing to establish that the State ever occupied the land to the east line set forth in the 1934 proceedings. Herein lies the weakness of the State's position. In both *Moosehead* and *Hussey,* the action was against a defendant in possession. In *Hussey* there was the further fact not here present that the claimant having accepted damages for land taken, sought damages again in trespass on the ground the taking was insufficient.

On the state of the record, we have no more than the following:

(1) An old highway with "true boundaries . . . doubtful, uncertain, or lost. . . ." 23 M.R.S.A. § 2101, *supra;*

(2) An attempt to locate and define the boundaries and limits in 1934;

(3) Uncertainty whether the State occupied any land beyond the limits of the old highway after the 1934 proceedings;

(4) The taking by the State in 1958 by eminent domain to precisely the line to which it claims title had been established in 1934.

Thus we have the unusual if not unique situation of the taker by eminent domain claiming that he has taken nothing.

The State has failed to show that the highway was established in the 1934 proceedings or that it has otherwise acquired title. In the 1958 taking, therefore, it must establish what land it has in fact taken. The search will not preclude an inquiry into the limits of the highway acquired prior to 1958 by use or otherwise except insofar as the claim may be based upon the action of the County Commissioners in 1934.

The State further argues: that where in fact the east line of Route 1 was on the face of the earth at the time of the taking is a matter of indifference, that it acquired in 1958 no land outside of the then existing route wherever located; and that regardless of the validity or invalidity of the 1934 proceedings no land was taken in 1958.

The State contends that the written description in the 1958 taking specifically limits the easterly boundary to the present easterly line of State Highway No. 1, wherever that may be, or, to quote from its brief that "[the 1958 line] follows along the easterly line of the then existing Highway No. 1 where it borders the appellant's land."

This, so the argument runs, effectively prevented any encroachment on or taking of the property of the appellants

(apart from the easements) in 1958. The written description, however, is found only in the State's brief and not in the record. The argument accordingly is not open to the State.

We are limited to the pleadings, stipulations, and the map admitted as an exhibit placing the line on the face of the earth.

Assuming the record included the description, it is nevertheless significant that that description is related to a base line and stations produced on the map in such manner as to make it sufficiently clear that the taking was to an easterly boundary ascertainable upon the face of the earth which the State merely claimed to be the easterly boundary of the existing State Highway No. 1. It follows that it still remains to be determined where the easterly boundary of the highway as it existed prior to 1958 had been established either by lawful location or user. Only thus can it be known to what extent, if any, property of the appellants was taken by the 1958 action. The right to develop this issue is exactly what the appellants are contending for in the instant case.

The entry will be

*Appeal sustained.*